STATE OF MISSOURI, ON PETITION OF DANIEL G. TAYLOR, ADMINISTRATOR OF ABRAHAM H. LEE, DECEASED, Respondent, *v.* THE ST. LOUIS COUNTY COURT, Appellant.

1. *Revenue — Taxes, assessment of by County Court — Certiorari will lie to review action of.* — The action of a County Court in assessing taxes upon property under the statute (Wagn. Stat. 1174, § 51) is clearly judicial, and hence the writ of *certiorari* will lie to review its action in this regard.

2. *Revenue — Bonds taxed according to the situs of the property, and not the domicile of its owner.* — Bonds of the "Masonic Hall Association" of St. Louis, in the hands of an administrator in St. Louis, are subject to taxation in this State, although the deceased owner of the bonds, at the time of his death, resided in Illinois, and the bonds had been once assessed in that

State, and were only transferred to Missouri for the purpose of ancillary administration. The actual *situs* of personal property, and not the domicile of its owner, determines under the law of what State it shall be taxed. Section 24, page 115, Wagn. Stat., providing that real estate shall descend according to the laws of its *situs*, and personal property shall be distributed according to the laws of the domicile of the decedent, has no application to the case under consideration.

In no sense can it be said that the property represented by these bonds was in the possession of the foreign administrator; and it is immaterial that the bonds may have been transmitted from such foreign administrator for the purpose of ancillary administration.

Such bonds are not exempt from local taxation on the ground that the law makes no special provision for taxing such securities. Under our law, bonds are left to be taxed like other property where they can be reached, except that if the owner resides in the State they shall be taxed in the county of his residence. (Wagn. Stat. 116, § 9.)

### *Appeal from St. Louis Circuit Court.*

*L. Gottschalk*, for appellant.

In City of St. Louis v. Wiggins Ferry Co., 40 Mo. 580, Judge Holmes lays down this general rule: "The personal property of a non-resident, actually situated in another State, is not to be assessed and taxed against him in this State; but the property of either a resident or a non-resident is taxable here if it be found situate within the local jurisdiction, whether it be in the hands of the owner himself or of his agent." (Maltby v. Reading & Columbia R.R. Co., Am. Law Reg., N. S., 479; 52 Penn. St. 140; Hood's Estate, 9 Harris, 114; West Chester School District v. Darlington, 2 Wright, 157.) In Faxton v. McCosh, 12 Iowa, 527, it is held that "the interests represented by the shares of stock in a railroad company, organized under the laws of this State, are within the jurisdiction of the State, even when the owners thereof are non-residents, and, as such, taxable here." (The People v. Home Ins. Co., 29 Cal. 533; The People *ex rel.* Jefferson v. Gardner *et al.*, 51 Barb. 352; Hoyt v. Commissioners of Taxes, 23 N. Y. 224; People *ex rel.* Kennedy v. Commissioners of Taxes, 35 N. Y. 423, 440–1; Finley v. City of Philadelphia, 32 Penn. 381.) There is nothing poetical about tax laws. Wherever they find property they claim a contribution for its protection without any special respect to the owner or his

occupation. (Catlin v. Hull, 21 Verm. 152 ; City of Albany v. Meekin, 3 Ind. 481 ; Wilkey v. City of Pekin, 19 Ill. 160 ; Mills y. Thornton, 26 Ill. 300 ; Sangamo & M. R.R. Co. v. County of Morgan, 14 Ill. 163 ; Johnson v. City of Lexington, 14 B. Monr. 648 ; Sprague v. Lisbon, 30 Conn. 19 ; Faxton v. McCosh, *supra* ; People v. Home Ins. Co., 29 Cal. 533.)

*Whittelsey*, for respondent.

I. The statutes do not require that debts due by citizens of this State to non-resident creditors should be listed for assessment and taxation. In the first place, the general provisions of the statute apply only to our own citizens, by requiring them to return to the assessor the list of their property subject to taxation. (Gen. Stat. 1865, ch. 12, §§ 9–12, 23–5 ; *id.*, ch. 11, §§ 1, 6 ; Wagn. Stat. 1166–9 ; *id.* 1161, § 9.) By the statute (Gen. Stat. 1865, ch. 11, § 6 ; Wagn. Stat. 1161, § 9) personal property is to be assessed in the county of the owner's residence ; not *in loco rei sitæ*. (Gen. Stat. 1865, ch. 11, § 4 ; Wagn. Stat. 1161, § 7; see also form of oath to be taken by persons returning lists of taxable property, Gen. Stat. 1865, ch. 12, § 12 ; Wagn. Stat. 1167, § 12 ; see also R. C. 1855, p. 1232, § 1.) The object of the statute and of all its provisions looks to the assessment of taxes upon the resident citizen. If the owner of property is not a citizen, nor residing here, he can not make return nor take the oath, and the statute does not require it nor contemplate any such proceeding. If goods and chattels are found here, the person having them in charge is to make return to the assessor, for they have an actual potential existence here — an actual *situs*. But debts have no *situs*. They are intangible, and it is not to be presumed that debts due non-resident creditors are to be assessed without express provisions for their assessment and the collection of the tax. If the State had intended to tax all the bonds issued by railroad corporations, counties, banks, etc., when owned by citizens of other States or aliens, would not the statutes have so said in express terms ? It taxes the stock of corporations to the owners of the shares, or taxes the property of the corporations as such ; but it

nowhere purports to tax the bonds of such corporations as such, nor when held by aliens or non-residents. To tax the shares and the bonds would be double taxation, which is not to be presumed. Provision is made for taxing stocks, etc. (Wagn. Stat. 1169, §§ 23–25), to the owners thereof, and the tax is to be paid by the company (§ 24). Again, no provision is made for collecting the taxes against the non-resident creditors. The collector, before he can levy, must make demand of the party liable personally, " or by visiting his place of abode for that purpose." (Wagn. Stat. 1188, § 26; Gen. Stat. 1865, ch. 135, § 26.) No demand can be made of a non-resident creditor. Special provision is made for non-resident owners of lands, requiring the collector to furnish, upon request, a statement of the taxes assessed (Wagn. Stat. 1187, § 24; Sess. Acts 1868, p. 416); but there is no such provision for taxes upon bonds or notes held by them or debts due them. Money lent or payable in a city could not be assessed and taxed against a non-resident creditor. (St. Paul v. Merrill, 7 Minn. 258.) The personal property of an intestate is to be taxed at his domicile, and not at the domicile of his personal representative. (Stephens v. Boonville, 34 Mo. 323.) That in the hands of a guardian is not taxable at the residence of the guardian, but at that of the ward. (School Directors v. James, 2 Watts & Serg. 568; Carlisle v. Marshall, 36 Penn. 397; West Chester School District v. Darlington, 38 Penn. 157; Spangler v. York, 13 Penn. 327; Hood's Estate, 31 Penn. 106.) The Pennsylvania cases assert the same principle as that of Stephens v. Boonville, 34 Mo. 323, but show an express provision taxing non-residents for some purposes; but in this State there is no express provision for that purpose. (Johnson v. Lexington, 14 B. Monr. 648.)

The defendant relies upon the Wiggins Ferry case, 40 Mo. 580; but there the company was treated as domiciled here, and its property as situate here. The statute has changed that. (Wagn. Stat. 1171, §§ 2, 3; Sess. Acts 1868, p. 144.)

II. The death of the foreign creditor or bondholder, and the taking out ancillary letters of administration in this State, do not make these bonds taxable in this State as property in the hands

or in charge of the administrator. The administrator is not the owner of the bonds ; he is but a trustee for the next of kin in Illinois, or, rather, for the administrator in that State, for to him the proceeds are to be remitted for distribution in accordance with the law of the domicile of the intestate. (See 32 Mo. 431.) For this ancillary administration our statute has made special provisions. (Wagn. Stat. 115, §§ 24–31.) The bonds belong to the foreign administrator, and he paid the tax at the domicile of the deceased. He must return them for taxation there, and must return the interest for the United States income tax. Moneys of a non-resident beneficiary are not to be taxed to a trustee at the place of his residence, except by special statute expressly so declaring. (Carlisle v. Marshall, 36 Penn. 397.) Trust funds are to be taxed at residence of the beneficiary. (*In re* Kellinger, 9 Paige Ch. 62 ; see Pennsylvania cases cited above ; 2 Watts & Serg. 568 ; 38 Penn. 157; 13 Penn. 327; 21 Penn. 106.) We do not deny the power of the State. We only say that it has not by its laws attempted to tax debts due foreign creditors, and that the necessity of administering here does not give a local *situs* to these debts ; they follow the domicile of the owner, the intestate. (Spraddling v. Pipkin, 15 Mo. 118 ; State, to use, etc., v. Campbell, 10 Mo. 124 ; Abbott v. Miller, *id*. 141 ; St. Paul v. Merrill, 7 Minn. 258.) Chattels have a local *situs*, debts have none.

The foreign administrator of a foreign creditor can not sue in our courts. He must procure some citizen of this State to take out letters, and then must turn over the choses in action to the ancillary administrator. (Naylor v. Moffatt, 29 Mo. 136 ; Williams v. Storrs, 6 Johns. Ch. 353 ; Rightmeyer v. Raymond, 12 Wend. 51.) Because the foreign administrator must thus be aided by the ancillary administration of this State, will it be presumed, when there is no express provision of the statute, that the choses in action, which must perforce be brought into this State for collection, become subject to taxation when they would not have been so if the intestate had lived ? Does the death of the creditor put upon his assets the burden of a taxation additional to that of his domicile ? The principle asserted in Stephens v.

Boonville, 34 Mo. 323, would affirm a contrary doctrine. In this case the administrator in Illinois had paid the tax for the same year for which the assessment complained of was made.

Bliss, Judge, delivered the opinion of the court.

The relator sued out of the Circuit Court of St. Louis county a writ of *certiorari* directed to the County Court, for the purpose of reviewing their action in assessing taxes upon property belonging to the estate represented by him. The proceedings were reviewed and the assessment set aside, whereupon the defendant appeals.

Counsel for appellant first contends that the writ will not lie to an action of this kind. The County Court of each county is directed (Wagn. Stat. 1174, § 51) to hear and determine allegations of erroneous assessment or mistakes in favor of those who have failed to go before the board of appeals, and the action of the court in the matter is clearly judicial in its character, and has always been so considered. This writ will therefore lie to review its action. (Marion County v. Phillips, 45 Mo. 75; In the matter of the Saline County Subscription, *id.* 52; St. Louis Mutual Life Ins. Co. v. Charles, *ante*, p. 462.)

The plaintiff showed to the County Court that the deceased was, at his death, a resident of Illinois; that he owned bonds due by the Masonic Hall Association of St. Louis, which were listed and taxed at his domicile in Illinois; that ancillary administration was taken out in St. Louis upon so much of the estate as is embraced in these bonds, and that the bonds were transferred to the possession of the St. Louis administrator for the purpose only of ancillary administration; yet the court held that these bonds, being actually in the hands of the St. Louis administrator, as belonging to the Missouri estate, were subject to taxation in St. Louis. The correctness of this decision is the only question for consideration.

Our statute makes no special mention of this description of property, but provides (Wagn. Stat. 1159, ch. 11, § 1) that taxes shall be levied "on all property, real and personal, except," etc. Sections 7 and 8 exempt certain classes of notes

and bonds, but the exemption does not cover those in controversy. The county authorities defend their assessment, as we have seen, upon the ground that these bonds are actually within the State and subject to its laws, while the relator claims that as personal property, and especially as choses in action, they follow the domicile of the owner, and can only be taxed at the place of such domicile.

It is evident they should not be assessed in both States, though an erroneous assessment in one State will not exempt them from a correct one in the other. We have no statute specially subjecting to taxation the bonds of our corporations wherever owned, and if they are liable at all, it is because they are here protected by our laws, and subject to the jurisdiction of our courts.

That the *situs* of personal property is the domicile of its owner, is a fiction, though color is given to its truth by the law in relation to the distribution of personal estates. If a citizen and resident of St. Louis own a farm in Illinois, no one pretends that the farm has any different location than if the owner lived upon it. But how with the cattle in its fields and stables, and the corn in its granaries? On what principle can they be said to belong to Missouri, so long as they are upon the farm? There is this difference : they can be removed to Missouri, while the farm can not; but, until removed, their *situs* is the farm; they help to swell the wealth of the locality; they are protected by its laws, and should be subject to its burdens. The same rule should be applied to bonds and notes, though from the different nature of the property their actual *situs* may be more doubtful. But, if it be established, although not the residence of their owner, the same result should follow as to them. Thus, if money be left by a non-resident in the hands of an agent for investment and loan, the money itself, the instruments taken for it, and the various forms which it assumes, so long as they remain in the hands of such agent, are local property, and upon every principle should be subject to the public burdens imposed upon other local property of the same kind. What difference does it make in the benefits derived by the owner from the protection afforded this property by the administration of the law, whether he live

near it or abroad? or what difference in the expense of such protection?

This view has been recognized by all the courts, but I will refer to only a few cases. In Catlin v. Hall, 21 Verm. 152, one Hammond was a resident of New York, and had placed promissory notes in the hands of the plaintiff in Vermont as his agent, to collect, re-loan and manage for his benefit. They were assessed at the locality of the agent, and he brought suit to test the legality of the assessment, which was fully sustained by the court, upon the principle that the property was invested in the State, under the protection of its laws, and should contribute to the support of the government which protects it. In The People v. Home Ins. Co., 29 Cal. 533, certain State bonds had been deposited by the defendant, a foreign corporation, as security for its liabilities, and were subjected to local taxation. The assessment was sustained, the court holding "the actual *situs* and control of the property within the State to be the condition which subjects it to taxation." The case of Hoyt v. Commissioners of Taxes, 23 N. Y. 224, arose out of an attempt to assess taxes against the owner, who was a resident of New York, upon his personal property in New Orleans. The Court of Appeals held the assessment as to tangible property to be illegal, but declined to give an opinion in regard to choses in action. But in the Supreme Court, in The People v. Gardner, 51 Barb. 352, it was held that a resident of New York was not liable to be assessed and taxed at his residence upon securities taken and held by his agents in other States. This court, so far as the question has come before us, has sustained the same view; and in St. Louis v. Wiggins Ferry Co., 40 Mo. 580, Judge Holmes thus states the general doctrine: "The property of either a resident or non-resident is taxable here if it be found situate within the local jurisdiction, whether it be in the hands of the owner himself or of his agents."

The only question, then, to be determined is whether the bonds belonging to the relator as administrator are so located in Missouri as to be taxable here, or whether they should be assessed at the residence of deceased. The fact that they have been once

assessed at the latter place cuts no figure, for the authorities at the true *situs* can not be thus deprived of jurisdiction.

In regard to the law governing the disposition of the property of a deceased person, our statute provides (Wagn. Stat. 115, ch. 125, § 24) that real estate shall descend according to the laws of its *situs*, and that personal property shall be distributed according to the laws of the domicile of decedent — thus embodying the existing law rather than declaring a new rule. This provision, it is claimed, should govern the location of the personal property of the estate for the purpose of taxation. If so, the rule should apply to all kinds of personal property, so that cattle, horses, steamboats, and buildings upon leased ground that may never have been within the jurisdiction of the State containing the domicile of decedent, could be alone taxed at that place. But the law upon this subject has no application to the question under consideration. In fixing the rights of distributees of property whose *situs* is changeable, and may be under one jurisdiction at one time and elsewhere at another, the law of some locality must be chosen, and it is very proper to govern its distribution by the law known to the deceased. But the principles governing the question of taxation are, as we have seen, very different, and we are only required to ascertain the actual location of the property at the time of its assessment.

Administration of so much of the estate of a non-resident as is found within our jurisdiction is ancillary, in that it becomes the duty of the administrator to transmit to the representative of the estate of the domicile any balance remaining after full administration. Yet so far as local creditors and local distributees are concerned, the administration is complete. Until such balance be transmitted the local administrator has full possession of all the property, and the foreign administrator has no right to intermeddle. In no sense can it be said to be in the possession of the foreign administrator, and it does not matter whether or not it may have been transmitted, or rather the evidence and representation of it, in the shape of bonds and notes, from such administrator to the local one. When transmitted for the purpose of administration, it becomes a local estate, it comes within the

jurisdiction of the tribunals of the domicile of the local administrator, it seeks the protection of its laws and the enforcing process of its courts, and until the closing up of the local administration it can have no other *situs*.

Counsel for relator claims exemption of these bonds from local taxation because the law makes no special provision for taxing such securities, as is made by the Pennsylvania act under consideration in Maltby v. Reading & Col. R.R. Co., 52 Penn. St. 140, to which case we have been cited by appellant. In order to reach all the bonds of a corporation, if the policy were to assess them for taxation without reference to where they were held, a similar provision would be necessary. We have made such provision in relation to the stock of corporations, but leave bonds to be taxed like other property where they can be reached, except that if the owner resides within the State they shall be taxed in the county of his residence. (Gen. Stat. 1865, ch. 11, § 9 ; Wagn. Stat. 1161.)

The oath required of tax-payers by section 12, chapter 12, Gen. Stat. 1865 (Wagn. Stat. 1167), expressly requires the disclosure of property like that under consideration. "You do solemnly swear [or affirm] that you have given a true and correct list of all taxable property, including therein money, notes or bonds in hand or on deposit, owned by you, or under your charge or management," etc. The fact that the property is held in trust creates no exemption, nor does it change its *situs*. We are referred to Stephens v. Mayor, etc., 34 Mo. 323 ; and it is true that within the State personal property is required by statute to be assessed at the domicile of the owner, and that statutory provision would be sufficient to justify the conclusion in the case cited, without claiming the proposition to be a general one.

I am of opinion that that part of the estate of decedent in the hands of the Missouri administrator is properly subject to taxation in this State, and not elsewhere, and that the judgment of the Circuit Court reversing the order of the County Court should be reversed. The other judges concur.